DECISION AND JUDGMENT ENTRY
This appeal comes to us from a judgment of the Lucas County Court of Common Pleas. There, appellant was convicted of several burglary-related offenses. Although the trial court incorrectly refused to consider the merits of appellant's oral motion for return of property, we deem that failure to be harmless error and affirm the denial of appellant's motion.
On September 3, 1997, appellant, Godfrey Turk, was indicted for receiving stolen property after attempting to sell a stolen baseball card collection. That offense was a violation of R.C. 2913.51, a felony of the fifth degree. On September 11 and 23, 1997, Toledo police officers executed a search warrant at appellant's home. A significant number of items were seized that appeared to be related to a series of break-ins referred to as the "Old Orchard burglaries." As a result, appellant was again indicted on September 19, 1997 for four additional offenses in a second case.
On February 5, 1998, the trial court conducted a hearing on appellant's motion to suppress evidence obtained from the search. Appellant claimed that the police officer who signed the affidavit did not have sufficient facts to conclude that property was concealed at appellant's residence. The trial court denied appellant's motion to suppress on February 19, 1998.
Appellant's attorney negotiated a plea arrangement to resolve the five charges presented in both cases. On March 20, 1998, appellant entered a no contest plea to the receiving stolen property charge in the first case, CR 97-2821. Appellant also entered a no contest plea to retaining stolen property as charged in the second count of the indictment in the second case, CR 97-2845. The latter was a violation of R.C. 2913.51, and a felony of the fourth degree.
In addition, appellant entered guilty pleas to the third and fourth counts of the indictment in the second case: having a weapon while under disability and receiving stolen property. The weapons charge was a violation of R.C. 2923.13(B), a felony of the third degree. The receiving stolen property offense was a violation of R.C. 2913.51, a felony of the fifth degree. The parties agreed that the remaining count, attempted burglary, would be dismissed. The parties also agreed that the sentence in the first case would be served concurrently to the sentences imposed in the second case.
On April 16, 1998, appellant appeared for sentencing. Before speaking in mitigation, appellant's attorney asked the trial court to order appellee, the state of Ohio, to return unaccounted property which had been seized.
The trial court declined to determine whether any of the hundreds of items seized belonged to one of the victims or to appellant or his companion. The dialogue with the trial court included in relevant part:
 "[APPELLANT'S ATTORNEY] My request of the Court is to consider ordering the return of properties which the State has not been able to account for. I've spoken with [the police detective] this morning. I understand that there are some items that he has confirmed that were seized that are Mr. Turk's property, some items of personal property, some documents, and I believe some clothing, perhaps. He's acknowledged that some of those items should be returned.
 "THE COURT: Let me stop you right there. I'm not going to make any determination that piece of silver A is returned to [appellant] and piece of silver B is given to some member of your community. That's what you're getting at, I'm not going to do that. * * *
 "Now, if you can reach an agreement with the Toledo Police Department and the State of Ohio through the office of the prosecutor on piece of silver A and piece of silver B, then that's fine, and I'll order by consent and agreement, but I am not going to sit here and fill this room up with items for [appellant's] residence or garage or warehouse or wherever it is and say this piece goes here and this piece goes there.
"* * *
 "[APPELLANT'S ATTORNEY]: * * * I was actually driving for something more broad than that in the terms of a general order of release to [appellant] of items that the State could not account for. * * *
 "THE COURT: How do I know whether they account for without some type of a trial and hearing?
"* * *
 "[D]on't think I'm going to set here in sentencing and make the determinations as to, and I'll use a phrase, piece of silver A and piece of silver B. I'm not going to do that. I know what you want, and I'm not going to do that. I'm not going to entertain that. * * *
"* * *
 "Now, if you want to file a suit or whatever you want to do, I don't care, but I am sentencing in these cases here, and not going to pin the Toledo Police Department down and say do you know where this item came from * * *."
 "[APPELLANT'S ATTORNEY]" I'm not asking the Court to be the arbiter of where piece A goes and where piece B goes. The frustration that we were having is that the case has been since indictment some five months or so, and that despite police investigation and review of reports of stolen property, there is a significant quantity of property that remains unaccounted for that was properly in [appellant's] possession.
 "I don't want to distract the Court's attention on sentencing today. We're prepared to go forward with sentencing. * * *
"* * *
 "[PROSECUTOR] [M]y suggestion is just as you have handled it, Your Honor, that a civil suit of some sort be filed by [appellant] * * *. Let the civil division of our office work it out and we will come to an agreement or a resolution or a trial on the matter of whose property belongs to who [sic].
 "THE COURT: Well, that's exactly what I'm going to do, which is nothing. * * * I'm not going to have a civil trial in the sentencing here * * *. [File] some type of civil suit or other type of special proceeding * * *.
 "[APPELLANT'S ATTORNEY]: I understand. I'll leave the issue be."
The trial court determined that appellant was not amenable to community control and that a prison sentence was consistent with the purposes of R.C. 2929.11. In accordance with the negotiated plea agreement, the court sentenced appellant to serve eleven months in prison on the receiving stolen property charge in the first case, which was to be served concurrently with the sentences totaling sixty-five months imposed in the second case. The court determined that consecutive sentences were appropriate in the second case because of appellant's prior criminal record.
On June 8, 1998, appellant, through counsel, moved for a return of property. Appellee responded by requesting an extension of time and an evidentiary hearing. On July 13, 1998, the trial court granted appellee's request for additional time, but denied the motion for an evidentiary hearing. On August 18, 1998, appellant moved, pro se, for the return of property, and his privately retained attorney filed a motion to withdraw from further representation the following day.
On September 11, 1998, appellant filed pro se notices of appeal in case numbers CR 97-2821 and CR 97-2845 and attached the sentencing judgment entries from both cases as the decisions being appealed. On October 27, 1998, this court appointed an attorney to serve as appellant's counsel for appeal in case numbers CR 97-2821 and CR 97-2845.
On October 13, 1998, the trial court denied appellant'spro se motion for return of property. On November 2, 1998, appellant filed a notice of appeal from that decision. However, on May 12, 1999 we dismissed that appeal because appellant had failed to file his brief in that case.
In his present appeal, appellant sets forth the following assignment of error:
 "The Trial Court Committed Reversible Error, and Materially Prejudiced Defendant-Appellant[,] When it Failed to Conduct a Full Hearing on Defendant-Appellant's Motions for the Return of Seized Property, Thereby Depriving Him of His Right to Due Process."
Appellant contends that the trial court was required to conduct an evidentiary hearing to determine whether the property appellant asked to be returned was related to appellant's offense, pursuant to R.C. 2933.41(C)(1), or whether it was unlawful for appellant to possess the items, pursuant to R.C. 2933.41(C)(2). Although the statute does not expressly require a hearing, appellant argues that the Supreme Court of Ohio has determined that an adversarial hearing is constitutionally implied in R.C.2933.41(C). State v. Lilliock (1982), 70 Ohio St.2d 23, 26-28. According to appellant, such a hearing is mandated to determine whether property was used in the commission of an offense and whether that possession was unlawful before a law enforcement agency may dispose of property in its custody. Id. In contrast, appellee urges that because appellant was seeking the return of contraband, "he was not subject to the hearing requirements of R.C. 2933.41."
Ohio statutory law governs the disposition of property seized by law enforcement officials. The return of certain types of seized property are governed by specific statutes. See, e.g., R.C. 2925.42 (forfeiture of property connected with felony drug abuse offenses). R.C. 2933.41 through 2933.43 define how law enforcement agencies must secure and dispose of seized, unclaimed, or forfeited property not covered by specific statutes. R.C.2933.41(A) requires law enforcement officials to safely maintain property lawfully seized or forfeited, other than contraband, until it is no longer needed for evidentiary purposes. That section notes that property which is not contraband is to be disposed of pursuant to R.C. 2933.41.
R.C. 2933.41(B) requires law enforcement agencies to identify persons entitled to possession of property in their custody which is not contraband and return the property "at the earliest possible opportunity." R.C. 2933.41(C) provides that a person may lose possession and/or ownership of such property if any of the following apply:
 "(1) The property was the subject, or was used in a conspiracy or attempt to commit, or in the commission, of an offense other than a traffic offense, and the person is a conspirator, accomplice, or offender with respect to the offense.
 "(2) A court determines that the property should be forfeited because, in light of the nature of the property or the circumstances of the person, it is unlawful for the person to acquire or possess the property."
The language in R.C. 2933.41(C)(1) reflects the definition of contraband set forth in R.C. 2901.01(A)(13):
 "`Contraband' means any property described in the following categories:
 "(a) Property that in and of itself is unlawful for a person to acquire or possess;
 "(b) Property that is not in and of itself unlawful for a person to acquire or possess, but that has been determined by a court of this state, in accordance with law, to be contraband because of its use in an unlawful activity or manner, of its nature, or of the circumstances of the person who acquires or possesses it, including, but not limited to goods and personal property described in [R.C. 2913.34(D)];
 "(c) Property that is specifically stated to be contraband by a section of the Revised Code or by an ordinance, regulation, or resolution * * *"
R.C. 2933.41(D) describes methods for disposal of unclaimed or forfeited property "which is subject to forfeiture due to its inherent nature, such as drugs, obscene materials, [and] firearms * * *." Lilliock, 70 Ohio St.2d at 27. However, a law enforcement agency must first apply to, and receive an order from, a court with territorial jurisdiction over it before disposing of such property.
In contrast, the procedure to dispose of contraband is set forth in R.C. 2933.43. R.C. 2933.43(C) provides in relevant part:
 "If the property seized was determined by the seizing law enforcement officer to be contraband because of its relationship to an underlying criminal offense or administrative violation, no forfeiture hearing shall be held under this section unless the person pleads guilty to or is convicted of the commission of, or an attempt or conspiracy to commit, the offense or a different offense arising out of the same facts and circumstances * * *. A forfeiture hearing shall be held in a case of that nature no later than forty-five days after the conviction * * *. The owner of any property seized because of its relationship to an underlying criminal offense * * * may request the court to release the property to the owner. Upon receipt of a request of that nature, if the court determines that the property is not needed as evidence in the underlying case * * *, the court may permit the release of the property to the owner. * * *
 "* * * When a hearing is conducted under this section, property shall be forfeited upon a showing, by a preponderance of the evidence, by the petitioner that the person from which the property was seized was in violation of [R.C. 2933.42(A)]." (Emphasis added.)
If a court orders forfeiture of contraband, then law enforcement officials may dispose of it using the same methods defined in R.C.2933.41(D) to dispose of property which is not contraband. R.C.2933.43(D)(1).
Appellee's argument that appellant was not entitled to relief because he was attempting to gain possession of "the fruits of his crime" assumes that all items seized were contraband. That position presumes that law enforcement officials unerringly seize only contraband when executing a search warrant. Whether a person is guilty of a crime or not, fundamental principles of due process do not authorize government officials to dispose of a person's property without notice and a hearing. See, generally, Lilliock,70 Ohio St.2d at 28.
 "The mere possession of cash, as well as video cassette recorders and other electronic items, is not unlawful. * * * To prove such items are contraband, the state must demonstrate that it is more probable than not, from all the circumstances, that the defendant used the items in the commission of criminal offenses." State v. Golston (1990), 66 Ohio App.3d 423, 431-432 (citations omitted).
The procedures to dispose of property in the custody of law enforcement officials depend upon whether the property is initially determined to be contraband or "noncontraband" by law enforcement officials.[1] Ostensibly, property which is not contraband would be disposed of under R.C. 2933.41, which provides no statutory right to a hearing for return of property which is not contraband. Appellant has relied upon State v. Lilliock for the proposition that while a hearing is not statutorily required to determine whether property is contraband under R.C. 2933.41(C), constitutional principles of due process imply that a hearing is mandated. However, the decision in Lilliock was superseded when the statute was amended in 1985.[2]
It is not necessary to determine whether a hearing is implied under R.C. 2933.41(C) pursuant to Lilliock or whether that statute controls this case. The issue before the trial court was not disposal of property, but return of property. The remedies in R.C. 2933.43 for recovering contraband also provide a statutory remedy to recover property which may not be contraband. R.C.2933.43(C) provides for a forfeiture hearing and recovery of property which was seized because "the seizing law enforcement officer [determined it was] contraband because of its relationship
to an underlying criminal offense." While police must use good faith in seizing items arguably covered by a search warrant, a police officer is not the final arbiter of what is or is not contraband. The phrase in R.C. 2933.43(C) focuses on what law enforcement officials determined was contraband because of its relationship to a criminal offense at the time of seizure. That phrase does not require that property be conclusively determined, as a matter of law, to be contraband under the definitions of R.C.2901.01(13) and R.C. 2933.41(C) before a person may request return of property or a forfeiture hearing may be conducted.
Here, R.C. 2933.43(C) authorized appellant to ask the court to return seized property before a forfeiture hearing could be scheduled. If the court determined that the property was not needed as evidence in appellant's underlying criminal case, the court could release that property; the court could also require a a bond to secure the property's return if later ordered to be forfeited. Id.
The trial court refused to entertain appellant's oral motion for return of property presented for the first time at the sentencing hearing. To the extent the trial court may have misinterpreted appellant's request as one for a forfeiture hearing, the trial court correctly concluded that it was under no obligation to conduct a forfeiture hearing and sort through each confiscated item at the sentencing hearing. First, appellant had not yet been convicted because he had not been sentenced. A conviction consists of both a finding of guilt and a sentence.State v. Henderson (1979), 58 Ohio St.2d 171, 177-179; State v.Garcia (Jan. 28, 1994), Lucas App. No. L-93-080, unreported; Crim.R. 32(C). A forfeiture hearing concerning contraband related to an underlying crime cannot be conducted until after the offender is convicted. R.C. 2933.43(C). Second, appellee, the state of Ohio, had not yet filed a petition for forfeiture. Id.
However, the trial court incorrectly determined that it had no obligation to consider appellant's motion for return of property. While the trial court was not obligated to conduct a hearing on appellant's oral motion for return of property at the same time as it conducted the sentencing hearing, the trial court should have either set the matter for a later hearing or insisted that it would not entertain appellant's motion without a written motion filed in conformance with local rules. See Loc.R.Crim. 4.05. Instead, the trial court incorrectly advised appellant to file "a suit".
However, the trial court's action was harmless because it did not deny appellant an opportunity to pursue his request for return of property at a later time. Further, appellant's attorney arguably abandoned his request for return of property. While the trial court inaccurately instructed appellant to "file a civil suit", appellant did, in fact, correctly file a written motion for return of property within two months of being sentenced. The trial court denied appellant's later motion without a hearing, which raises questions of due process. However, appellant failed to prosecute an appeal from that decision and waived any arguable error arising from it.
Accordingly, appellant's sole assignment of error is found not well-taken.
The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
HANDWORK, J., RESNICK, J., SHERCK, J., CONCUR.
[1] Before trial, an alleged offender can regain custody of seized property if the offender successfully presents a motion to suppress. R.C. 2933.27 and Crim.R. 12(F).
[2] R.C. 2933.41(C) was amended March 28, 1985 to overrule the decision in State v. Lilliock (1982), 70 Ohio St.2d 23. Statev. Conroy (1988), 50 Ohio Misc.2d 15, 15-16.
 "Before the amendment, the first sentence of R.C. 2933.41(C) read as follows: `A person loses any right he may have to possession of property.' The amendment of this statute by the legislature in March 1985 added the key language `if either of the following apply' * * *. By the addition of this language, the legislature obviously intended to change the effect of the statute, removing the two-prong test defined by Lilliock. Substituted in its place are two separate tests either of which if satisfied effects the forfeiture of property." Id.